UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
JOHN DAVID PFIESTER,
    Debtor.                                                No. 7-08-13109 SA

**MEMORANDUM OPINION ON**
**DEBTOR'S EXEMPTION CLAIMS**

This matter came before the Court for hearing on Debtor's Objection to the Trustee's Final Report and Application for Compensation. Docs 42 and 40 respectively. The ground for the objection was an unresolved objection to Debtor's exemptions of a retirement account and of preference recovered by the Trustee. (Doc 20.) The parties resolved the retirement account issue on their own, leaving only the exemption of the preference as an issue for the Court. Debtor is represented by his attorney Don Provencio. The Trustee is represented by Moore, Berkson & Gandarilla, P.C. (Bonnie G. Gandarilla and George M. Moore). This is a core proceeding. 28 U.S.C. § 157(b)(2)(A). The parties agreed to waive an evidentiary hearing, preferring to submit stipulated facts and written arguments. For the reasons set forth below, the Court finds that Debtor may not exempt any part of the preference recovery. The Trustee's objection will be sustained.

**FACTS**

The parties agreed to the following facts:

1. The Debtor filed a Chapter 7 bankruptcy on September 19, 2008.

2.  The Debtor listed certain assets on Schedule B of his Petition. At line 12 of Schedule B he set out an Individual Retirement Account valued at $10,000.00 and at line 35 of Schedule B he set out a Preference Recovery by Trustee valued at $7,500.00.

3.  The Trustee recovered a preferential transfer from AT&T Universal Card and presently holds approximately $9,000.00 which is related to the preferential recovery set out in Debtor's Schedule B.

4.  Accompanying his Petition, the Debtor filed Schedule C which claimed as exempt the assets listed on Line 12 and 35 of Schedule B of the Petition.

5.  The Trustee timely filed an Objection to Debtor's Claims Of Exempt Property objecting to the claim set out on Line 12 because the Trustee "has not verified the value of the Debtor's interest or the source of the funds deposited in the IRA."

6.  The objection to the claim set out on Line 12 has been resolved because the Trustee has verified the value of the Debtor's interest or the source of the funds deposited in the IRA, the exemption is allowed and the Trustee will agree to an Order withdrawing his objection to this exemption.

7.  The Trustee timely filed an Objection to Debtor's Claims Of Exempt Property objecting to the claim set out on Line 35

Case 08-13109-s7    Doc 53    Filed 01/24/11    Entered 01/24/11 13:22:16 Page 2 of 11

because "upon information and belief, the preference described was for funds in the amount of $15,500.56 that Debtor voluntarily paid to AT&T Universal Card in the ninety days prior to the filing of his chapter 7 petition."

8.  The only issue before this Court is whether, as set out under, U.S.C. §522(g)(1)(A) the payment to AT&T Universal Card made within the ninety days prior to the filing of his chapter 7 petition was an involuntary or a voluntary transfer by the Debtor.

9.  Prior to filing bankruptcy, Debtor was involved in a divorce proceeding in the Second Judicial District Court Numbered DM-2007-03713.

10. On February 12, 2008, Debtor and Heather Pfiester entered into a Marital Settlement Agreement (the "MSA") in which the Debtor agreed to pay the outstanding balance on the community's AT&T credit card from the proceeds of the sale of marital residence located at 7128 Boxwood Ave NE, Albuquerque, NM 87113.  (A copy of the MSA was attached as Exhibit A.)

11. The Debtor and Heather Pfiester were both represented by counsel in the negotiation of the MSA.  The MSA stated on page 1 that it was "a compromise agreement as to their rights and obligations" and was for consideration.

12. On June 18, 2008, the District Court Judge entered a Minute Order in Case No. DM-2007-03713 on a hearing on "Report Back and Motion to Enforce," and at paragraph 1 required that "All sales proceeds after cost of sale mortgages shall be paid to AT&T Credit Card by Land America Title." The Court also ordered at paragraph 3 that "This Court is enforcing the Marital Settlement Agreement." (A copy of the Minute Order was attached as Exhibit B.)

13. On June 16, 2008, Land America New Mexico Title Company handled the distribution of proceeds from the sale of real property sold by the Debtor in which the Title Company paid funds in the amount of $15,500.56 to AT&T as required under the Minute Order entered in Case No. DM-2007-03713. (A copy of the Settlement Statement was attached as Exhibit C.)

**<u>DISCUSSION</u>**

The only issue for the Court it how to apply Bankruptcy Code § 522(g), which provides, in relevant part:

> [T]he debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if--
>     (1)(A) such transfer was not a <u>voluntary</u> transfer
>     of such property by the debtor; and
>     (B) the debtor did not conceal such property[.]

(Emphasis added.)

The Bankruptcy Code does not define the term "voluntary." Tackett v. Dixon (In re Tackett), 21 B.R. 107, 108 (Bankr. D. N.M. 1982). The cases interpreting section 522(g) suggest that there is a broad spectrum with "voluntary" at one end, and "involuntary" at the other. Id. Black's Law Dictionary defines a "voluntary payment" as one "made by a debtor of his own will and choice, as distinguished from one exacted from him by process of execution or other compulsion." In re Sims, No. 13-05-20101-SR, slip op. at 11 n. 10 (Bankr. D. N.M. April 3, 2007)(quoting Black's Law Dictionary 1129 (6th ed. 1990)). Furthermore, "by and large, the bankruptcy courts have refused to consider any transfer other than one that takes place by operation of law to be necessarily a voluntary transfer for purposes of section 522(g)(1)." Davis v. Suderov (In re Davis), 148 B.R. 165, 173 (Bankr. E.D. N.Y. 1992), aff'd, 169 B.R. 285 (E.D. N.Y. 1994). In a very widely cited case from South Dakota, Bankruptcy Judge Peder K. Ecker stated:

> For purposes of this decision, this Bankruptcy Court holds that an 11 U.S.C. Section 522(g)(1)(A) voluntary transfer occurs when a debtor, with knowledge of all essential facts and free from the persuasive influence of another, chooses of her own free will to transfer property to the creditor. A voluntary transfer does not occur where a creditor has harassed, insulted, and shamed a debtor into transferring the property to the creditor. Nor has a voluntary transfer occurred where a creditor has concealed or failed to inform a debtor of essential facts necessary for the debtor to make an intelligent decision on whether to transfer the property to the creditor. This is especially true where a debtor can show that she would not have made

Page -5-

the transfer had she been informed of all the essential facts.

Reaves v. Sunset Branch, Nat'l Bank of South Dakota (In re Reaves), 8 B.R. 177, 181 (Bankr. D. S.D. 1981). But see Tanton v. Nolen (In re Nolen), 40 B.R. 6, 10 (Bankr. M.D. Ala. 1984) (Criticizing Reaves for injecting elements of "knowing" and "freely made" into the definition of voluntary, and using a more common-sense "own free will" definition.)

The transfer at issue in this case resulted from a settlement of domestic relations litigation between Debtor and his former spouse.

> The law favors resolving controversies through compromise and settlement rather than through litigation. Williams v. First National Bank, 216 U.S. 582, 592, 30 S.Ct. 441, 444, 54 L.Ed. 625 (1910). Settlement of litigation is usually a compromise of disputed liability by the parties and is favored as a matter of public policy. Smith v. Munro, 134 Vt. 417, 365 A.2d 259 (1976).
> The settlement of a lawsuit embodies the essence of freedom of choice. Rather than have a court of competent jurisdiction or a jury adjudicate the dispute, the parties to a settlement choose to compromise, ending the litigation themselves and eliminating an uncertain outcome. A compromise or settlement agreement is a contract, and as such, requires the necessary ingredients of contractual formation, including freedom from duress or force.

Terry v. Witten & Carter, P.C. (In re Terry), 56 B.R. 538, 540 (Bankr. D. Vt. 1986). Accord Builders Contract Interiors, Inc. v. Hi-Lo Industries, Inc., 139 N.M. 508, 511, 134 P.3d 795, 798, 2006-NMCA-053, {8} (Ct. App. 2006)("Because a settlement agreement is a species of contract, we also recognize and give

Page -6-

effect to the intersecting strong public policy of freedom to contract that has been enforced in New Mexico.")(Citations and internal quotation marks omitted.); Herrera v. Herrera, 126 N.M. 705, 708, 974 P.2d 675, 678, 1999-NMCA-034, {9} (Ct. App. 1999)("All settlement agreements are contracts and therefore are subject to contract law.") and 126 N.M. at 710, 974 P.2d at 680, 1999-NMCA-034 at {18}("A voluntary marital settlement agreement entered into by spouses is sacrosanct and will not be upset by the court absent fraud, duress, mistake, breach of fiduciary duty or other similar equitable grounds for invalidating an agreement.")(Citations and internal quotation marks omitted.)

The marital settlement agreement in this case was entered into by parties in litigation. Each was represented by an attorney. There are no allegations of fraud, coercion, duress or unequal bargaining position. It appears that the agreement was voluntarily entered into by the parties. Therefore, the Court concludes that either under the Davis or Nolen definitions, Debtor voluntarily transferred property.

This conclusion is further supported by a Tenth Circuit Bankruptcy Appellate Panel case dealing with a domestic relation issue. In Thompson v. Unruh (In re Thompson), Barbara Unruh executed an antenuptial agreement with the future debtor that provided that if she sold any real estate she currently owned and the proceeds were invested in jointly held real estate, she would

Case 08-13109-s7    Doc 53    Filed 01/24/11    Entered 01/24/11 13:22:16 Page 7 of 11

retain a lien on the new property in the amount she invested.
240 B.R. 776, 778 (10th Cir. BAP 1999). Nothing in the case
indicates that the agreement was ever recorded. After their
marriage, she mortgaged separately owned real estate and used
$50,000 of the proceeds as a down payment on real estate
purchased as joint tenants with right of survivorship. Id.
Barbara then died intestate. Id. The administrator of her
estate sought instructions from the probate court concerning the
effect of the antenuptial agreement on the administration of the
estate. Id. After a trial, the probate court ruled that the
antenuptial agreement was clear and unambiguous and that the
agreement was valid. Id. at 779. The probate court then valued
the claim and entered an order establishing a lien in the amount
of $41,154.97 against the property. Id. Debtor filed a chapter
13 petition, declared the property an exempt homestead, and filed
a chapter 13 plan that would avoid the lien under section 522(f).
Id. The bankruptcy court denied confirmation. Id. On appeal,
the BAP ruled:

> The debtor seeks to avoid the lien created by the
> antenuptial agreement pursuant to 11 U.S.C. § 522(f).
> Section 522(f)(1)(A) allows the debtor to avoid the
> fixing of a lien on an interest of the debtor in
> property to the extent it impairs an exemption if the
> lien is a judicial lien. A "lien" is defined as a
> "charge against or interest in property to secure
> payment of a debt or performance of an obligation." 11
> U.S.C. § 101(37). A "judicial lien" is defined as:
> "lien obtained by judgment, levy, sequestration, or
> other legal or equitable process or proceeding." 11
> U.S.C. § 101(36). A security interest is a "lien

Page -8-

created by an agreement." 11 U.S.C. § 101(51). There
are three categories of liens, which are mutually
exclusive: (1) security interests; (2) judicial liens;
and (3) statutory liens. In re Sanders, 61 B.R. 381,
383 (Bankr. D. Kan. 1986) (citing In re Jones, 13 B.R.
945, 947 (Bankr. E.D. Pa. 1981)). "It is the origin of
the creditor's interest rather than the means of
enforcement that determines the nature of the lien."
Id. Just because a creditor resorts to the judicial
process to enforce the lien, it does not mean the lien
is a judicial lien. Id. Congress intended for
consensual liens or liens by agreement to be defined as
security interests. Naqvi v. Fisher, 192 B.R. 591, 595
(D. N.H. 1995) (citing H.R.Rep. No. 95-595, 95th Cong.,
1st Sess. at 314 (1977); S.Rep. No. 95-989, 95th Cong.,
2d Sess. at 26 (1978), reprinted in 1978 U.S.C.C.A.N.
5787, 5813, 6271; In re Dunn, 109 B.R. 865, 867 (Bankr.
N.D. Ind. 1988)). Courts have determined that liens
created by settlement agreements which are incorporated
into divorce decrees are consensual liens. Id. at 596
(citations omitted). ...

> This [antenuptial] agreement has been determined
valid and unambiguous by the state court. The state
court further found the antenuptial agreement created a
lien against the debtor's homestead. It was not the
action in state court that created the lien. The lien
came into existence when the mortgage proceeds were
used as a down payment on the marital residence. Even
though the Appellees brought an action in state court
which ultimately settled the amount of the lien, it is
not a "judicial lien."

240 B.R. at 781.

Admittedly, Thompson is a lien avoidance case dealing with Section 522(f). This case deals with Section 522(g). Section 522(f) allows avoidance of judicial liens, but not the avoidance of security interests, to protect an exemption. "The term 'judicial lien' means lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36). "The term 'security interest'

Page -9-

means lien created by an agreement." Id., § 101(51). Therefore, section 522(f) distinguishes between a lien imposed upon the debtor through process from a lien created by agreement. The term "agreement" connotes voluntary action. Schwegmann Bros. v. Calvert Distillers Corp., 341 U.S. 384, 390 (1951)("Contracts or agreements convey the idea of a cooperative arrangement, not a program whereby recalcitrants are dragged in by the heels[.]") See also Life Music, Inc. v. Edelstein, 309 F.2d 242, 243 (2nd Cir. 1962)("[A]greement usually connotes a voluntary undertaking of two or more parties[.]"); Black's Law Dictionary 67 (6th ed. 1990)("A meeting of two or minds; a coming together in opinion or determination; the coming together in accord of two minds on a given proposition.") Therefore, section 522(f) allows exemption of property taken from a debtor, but not property a debtor voluntarily agreed to transfer. Section 522(g) is structured to the same end; it only allows exemption of property that was not voluntarily transferred.

"The purpose of section 522(g) is to prevent a debtor from claiming an exemption in recovered property which was transferred in a manner giving rise to the trustee's avoiding powers, where the transfer was voluntary or where the transfer or property interest was concealed." Russell v. Kuhnel (In re Kuhnel), 495 F.3d 1177, 1180 (10th Cir. 2007)(citing Zubrod v. Duncan (In re Duncan), 329 F.3d 1195, 1201 (10th Cir. 2003)). In this case,

Page -10-

the Trustee filed suit and used his avoiding powers to recover the property in question. Denying Debtor's exemption in this case comports with the stated policy of section 522(g). The Court will enter an Order Sustaining Trustee's Objection and Denying the Exemption of the preference recovery.

                                  Honorable James S. Starzynski
                                  United States Bankruptcy Judge

Date Entered on Docket: January 24, 2011

Copies to:

Donald Provencio
1721 Carlisle Blvd NE
Albuquerque, NM 87110-5621

Bonnie Bassan Gandarilla
Moore, Berkson & Gandarilla, P.C.
PO Box 7459
Albuquerque, NM 87194

Philip J Montoya, Trustee
PO Box 159
Albuquerque, NM 87103-0159

Alice Nystel Page
Office of US Trustee
PO Box 608
Albuquerque, NM 87103-0608